IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:22-CV-95-RJ

PAMELA MICHELLE FREEMAN,

               Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

               Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-17, -22] pursuant to Fed. R. Civ. P. 12(c). Claimant Pamela Michelle Freeman ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on March 20, 2014, alleging disability beginning March 13, 2013. (R. 506–15). Both claims were denied initially and upon reconsideration. (R. 150–213). A hearing before Administrative Law Judge ("ALJ") Mincey was held on May 10, 2017, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 40–72). On September 17, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 214–38). The Appeals Council granted Claimant's request for review based on Claimant's challenge under the Appointments Clause of the Constitution to the manner in which the ALJ was appointed, and on December 13, 2019, the case was remanded to a different ALJ to issue a new decision. (R. 239–42).

On October 14, 2020, ALJ Thawley held an administrative hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 73–119). On December 16, 2020, the ALJ issued a decision denying Claimant's request for benefits. (R. 243–68). The Appeals Council granted Claimant's request for review and remanded the case to an ALJ to give further consideration to the treating source opinion of Sid Hosseini, D.O. and Robin Pride, LCASA, LPCA and to the nonexamining source opinion of Kerri Moran and to explain the weight given to such opinion evidence where the ALJ failed to discuss either opinion. (R. 269–74).

On September 3, 2021, ALJ Sweeda held an administrative hearing at which Claimant, represented by counsel, and a VE appeared and testified. (R. 120–49). On November 22, 2021, the ALJ issued a decision denying Claimant's request for benefits. (R. 9–39). The Appeals Council denied Claimant's request for review on April 25, 2022. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision and alleging the ALJ improperly weighed the opinion of Dr. Hosseini and Pride. Pl.'s Mem. [DE-18] at 3–11.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d

2

Case 7:22-cv-00095-RJ  Document 24  Filed 09/21/23  Page 2 of 11

514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the

3

first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had engaged in substantial gainful activity from April 2019 to June 2020, but there had been a continuous twelve-month period during which Claimant did not engage in substantial gainful activity so the ALJ proceeded in the sequential evaluation. (R. 14–15). Next, the ALJ determined Claimant had the severe impairments of degenerative disc disease, obesity, diabetes, hyperlipidemia, gastroesophageal reflux disease (GERD), peripheral neuropathy, anxiety, and depression, as well as the non-severe impairment of hypertension. (R. 15). However, at step three the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15–19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information;

4

interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 17–18).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations:

> no climbing ladders, ropes, or scaffolds; frequent climbing ramps or stairs; frequent balancing, stooping, kneeling, crouching, or crawling; no exposure to work hazards; can concentrate sufficiently in two-hour increments to perform simple, repetitive tasks; occasional contact with the general public; no work in a team setting; and occasional changes in work setting or procedure.

(R. 19–27). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence. (R. 20). At step four, the ALJ concluded Claimant was unable to perform the requirements of her past relevant work as a meat packager. (R. 27). Nevertheless, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant can perform other jobs that exist in significant numbers in the national economy. (R. 28–29).

## V. DISCUSSION

Claimant contends the ALJ improperly weighed the opinion of Dr. Hosseini and Pride by failing to identify good reasons for rejecting the opinion, cherry picking the record, and making a conclusory assessment. Pl.'s Mem. [DE-18] at 6–11. Defendant counters that the ALJ properly applied the applicable regulations and provided four detailed reasons why he afforded little weight to the opinion. Def.'s Mem. [DE-23] at 5–18.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Because Claimant filed her claim prior to March 27, 2017, 29 C.F.R. §§ 404.1527 and 416.927 govern how the ALJ considers the medical opinions in Claimant's case. Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician)

6

or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

On April 11, 2017, Pride completed a form Treating Source Statement regarding Claimant's psychological conditions, which was also signed by Dr. Hosseini. (R. 1459–63). Pride and Dr. Hosseini opined, in relevant part, that Claimant was mildly limited in the ability to understand, remember or apply information; to interact with others; and in long term memory; she was moderately limited in the ability to concentrate, persist or maintain pace; adapt or manage oneself; remember locations and work-like procedures; and understand and carry out detailed but uninvolved written or oral instructions; and she was markedly limited in short term memory and understanding and carrying out very short and simple instructions. (R. 1461–62). They also found that she could maintain attention and concentration for thirty minutes before needing redirection or requiring a break; she could sometimes, but not consistently, work with coworkers, supervisors and the general public; and she was likely to be off task for 25% of a typical workday and would be absent more than 4 days per month. (R. 1462–63).

The ALJ considered the opinion but gave it little weight. (R. 25–26). "[T]he ALJ is required to 'give good reasons' when explaining the weight accorded to a treating physician's opinion." *Caulkins v. Kijakazi*, No. 20-1060, 2022 WL 1768856, at *6 (4th Cir. June 1, 2022) (citing SSR 96-2p, 1996 WL 362211 (July 2, 1996). Here, the ALJ provided four "good reasons"

7

for discounting the opinion.

First, the ALJ found that a supportable explanation was not provided for the opinion because there were "insufficient references to medically acceptable objective clinical or diagnostic findings." (R. 25). The opinion references an August 3, 2016 clinical assessment and Claimant's reported symptoms of depression and trauma in support of the opinion. (R. 1459). However, the clinical assessment does not appear in the record, and there are no mental health treatment records from any sources in the record, (R. 26), despite the ALJ advising Claimant's counsel at the administrative hearing that there were no psychological treatment notes in the record, suggesting counsel submit them, and keeping the record open for thirty days. (R. 147–48). The ALJ appropriately considered the fact that the opinion did not reference any specific clinical or diagnostic findings to support its conclusions. *See Dunn*, 607 F. App'x at 268 ("[T]he more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given.") (citation omitted); 20 C.F.R. § 404.1527(c)(3) (listing supportability as a factor in evaluating any medical opinion). The ALJ also properly noted that the opinion regarding Claimant's *markedly limited* in understanding and carrying out *very short and simple* instructions appeared contradictory to the opinion that she was only *moderately limited* in understanding and carrying out *detailed* instructions. (R. 25); *see Manuel A. v. Kijakazi*, No. CV 22-2739-BAH, 2023 WL 4664732, at *6 (D. Md. July 20, 2023) (finding the ALJ's assessment of a treating physician's opinion as "unpersuasive" was supported by substantial evidence where the opinion was internally inconsistent).

Next, the ALJ discussed the length of Claimant's treatment relationship with Pride and Dr. Hosseini. (R. 25–26). The regulations provide that "[g]enerally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will

8

give to the source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2)(i), 416. 927(c)(2)(i). The ALJ noted that the opinion stated Claimant was first treated in August 2016, which is approximately eight months prior to the date of the opinion. (R. 25). However, there were no mental health treatment records from these providers in the administrative record and thus, no evidence regarding the type, frequency, duration, or effectiveness of mental health treatment received by Claimant from these providers. (R. 26); *see Fannon v. Astrue*, No. 2:11CV00045, 2012 WL 4458144, at *4 (W.D. Va. May 15, 2012) (finding no error where ALJ afforded little weight to treating physician's opinion based on, among other things, the limited treating relationship, the opinion appeared to be based on a one-time clinical examination, and there were no records of follow-up visits). The ALJ rightly concluded that "the treating relationship did not last long enough for the medical source to have obtained a longitudinal picture of the claimant's medical condition throughout the relevant period." (R. 26).

Third, the ALJ found that mental status examinations in the record had few findings of mental abnormalities and that the current treatment notes indicated no problems in mental functioning. (R. 26). As previously noted, there are no mental health treatment notes in the record. The ALJ also observed that treatment notes from Claimant's primary care provider reflected normal mental status examinations. (R. 23). For example, in the exhibits cited by the ALJ spanning several months in 2020 and 2021, Claimant denied anxiety, depression, or an inability to concentrate, and she demonstrated appropriate mood and affect and good judgment and insight. (R. 1740, 1742, 1744, 1746, 1749, 1751, 1754, 1756, 1759, 1761, 1765, 1767, 1769, 1899, 1901, 1903, 1905). Other treatment records throughout the relevant period, including a treatment note cited by Claimant, Pl.'s Mem. [DE-18] at 9 (citing R. 951), are equally unremarkable. *See, e.g.*, (R. 948, 952, 1093, 1113, 1151, 1200, 1204, 1523, 1567, 1582, 1604, 1611); *see also Hancock v.*

9

*Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted) ("[I]n reviewing for substantial evidence, [the court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ."). Inconsistency with the record and a lack of support in the medical evidence are proper reasons to afford a treating physician's opinions less weight. *Bailey v. Kijakazi*, No. 4:20-CV-152-M, 2022 WL 821442, at *6 (E.D.N.C. Mar. 1, 2022) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) ("While the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that he concluded that the doctor's opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*.")), *report and recommendation adopted*, 2022 WL 821162 (E.D.N.C. Mar. 17, 2022). Thus, the ALJ appropriately considered that the limitations in the opinion were inconsistent with other evidence in the record.

Lastly, the ALJ concluded that other opinion evidence was inconsistent with the assessments of Pride and Dr. Hosseini, specifically citing Dr. Link's June 3, 2014 opinion that Claimant was able to understand and carry out simple instructions, which conflicted with the assessment that Claimant was markedly limited in this area. (R. 24, 26, 944, 1462). Claimant contends that this is not a "good reason" for discounting Pride and Dr. Hosseini's opinion because Dr. Link's opinion is stale, the ALJ should not have given more weight to the state agency reviewers' opinions because they were also stale, and Pride and Dr. Hosseini's opinion is consistent with the opinion of Kerri Moran, a vocational rehabilitation expert. Pl.'s Mem. [DE-18] at 7–9. None of these arguments provide justification for reversing the ALJ's decision.

Claimant alleged disability beginning March 13, 2013, and thus Dr. Link's opinion from June 2014 was relevant to disability determination. The ALJ also acknowledged that Dr. Link's opinion was six years old in only affording it "some weight" and was likewise "mindful" of the

10

age of the state reviewers' opinions and adjusted the RFC based on a review of all the medical evidence and the hearing testimony. (R. 24–25). The ALJ also cited other evidence that was inconsistent with Pride and Dr. Hosseini's opinion that Claimant was markedly limited in the ability to understand carry out short and simple instructions, including Pride and Dr. Hosseini's own conclusion that Claimant was only moderately limited in the ability to understand and carry out detailed instructions and the lack of medical evidence supporting the opinions. (R. 25). As for Kerri Moran's opinion, the ALJ gave it "very little weight" because she is not a medical source and there are no treatment records or clinical findings to support the opinion, (R. 26), and Claimant does not challenge these findings. The ALJ provided several "good reasons" for discounting Pride and Dr. Hosseini's opinion, discussed the relevant factors, and provided a sufficient explanation linking the evidence to his conclusion from which the court could engage in meaningful review. Accordingly, Claimant's assertions of error lack merit.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-17] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] is ALLOWED, and Defendant's final decision is affirmed.

So ordered, this the 21st day of September, 2023.

Robert B. Jones, Jr.
United States Magistrate Judge